# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Best Buy Stores, L.P.,**

      Plaintiff,

v.

**Developers Diversified Realty Corp., et al.,**

      Defendants.

Civil No. 05-2310 (DSD/JJG)

**REPORT
AND
RECOMMENDATION**

---

     This matter came before the undersigned on January 15, 2008 on the defendants' motion for sanctions (Doc. No. 550).  Joel A. Mintzer, Esq., and Thomas C. Mahlum, Esq., appeared on behalf of plaintiff Best Buy Stores (Best Buy).  Steven Kaufman, Esq., Martin S. Chester, Esq., and Amanda A. Kessler, Esq., appeared on behalf of the defendants.  This motion is referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(b).

## A.     Introduction

     Following lengthy and contentious discovery disputes, this litigation returns on a motion for sanctions.  Although this Court has discussed many of the particulars of this dispute in prior orders, it is once again useful to briefly review and summarize the claims.

     Best Buy brings action for fraud, breach of contract, and breach of fiduciary duty against eighteen of its landlords, the defendants here.  The leases generally provide that the defendants are liable for certain property damage and personal injury claims.  To help cover these costs, the leases require Best Buy to pay for a proportionate share of the defendants' insurance coverage.

Best Buy alleges that the defendants obtained coverage for claims over $100,000 and that they paid lesser amounts out of pocket, under what the parties have sometimes called the "first dollar program." The defendants allegedly billed the costs of the first dollar program to Best Buy as insurance.

In the fraud claims, Best Buy contends the defendants misrepresented the first dollar program as insurance. In the breach of fiduciary duty claims, Best Buy asserts its payments for insurance were received in trust, yet the defendants misappropriated them to the first dollar program. In the contract claims, Best Buy contends the first dollar program was not insurance as defined under the leases.

The defendants have pursued discovery on various elements of these claims. By orders on September 5, 2007; October 16, 2007; and October 31, 2007, this Court required Best Buy to provide certain discovery. Alleging that Best Buy did not comply with the orders, the defendants now move for sanctions.

**B.      Standard of Review**

The defendants bring their motion under Rule 37(b)(2)(A), which provides in relevant part,

> If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following:
>
> (i)      directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; [or]
>
> (ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]

To impose sanctions under this rule, a party must willfully violate an order to compel, and the violation must cause prejudice to another party. *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019-20 (8th Cir. 1999).

Where appropriate, a court ordinarily has discretion to craft an appropriate sanction. *See Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 940-41 (8th Cir. 2000). The exercise of this discretion is guided by the significance of the evidence that is withheld and the prejudice caused to the other party, and the sanction should accordingly be related to the evidence that is withheld. *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329-30 (8th Cir. 1986).

## C.   Documents Showing Calculation of Insurance Charges

The defendants' arguments may be framed into four areas. One is that Best Buy failed to produce documents showing how its landlords calculate insurance charges, and in particular, that Best Buy has concealed documents showing that its other landlords operate something like a first dollar program. The defendants add that, because these documents are late or missing, Best Buy has likely failed to supply supporting or explanatory documents as well.

### 1.   Orders

This argument is based on the orders of September 5 and October 16. The earlier order provides in relevant part,

> [The defendants seek] all documents about how Best Buy's landlords calculate insurance charges under their leases. . . .
>
> The information sought by this request is plainly relevant. . . . It may . . . show whether Best Buy agreed [elsewhere] to insurance charges comparable to those in the first dollar program. . . .
>
> This evidence . . . has the potential to be particularly relevant. And the defendants also focus on communications regarding *how* insurance charges are calculated. This Court concludes that

> discovery in this area should go forward, albeit with some
> appropriate limits on scope.
>
> To ensure some equivalence between the properties at issue in this
> litigation, and insurance practices under other leases with other
> landlords, this Court shall limit discovery to Best Buy stores in the
> same states as the properties at issue here . . . .  In this area, Best
> Buy shall only be required to disclose documents that substantively
> explain how insurance charges are calculated.

(Emphasis in text.)  The order required such documents to be produced on or before October 5, 2007.

The parties subsequently disputed whether other landlords' leases, in themselves, may be viewed as documents that "substantively explain how insurance charges are calculated."  This dispute led to an oral ruling at a hearing on October 16, 2007, at which this Court concluded that leases were indeed included.

### 2.      Alleged Violations

To demonstrate a violation of these orders, the defendants note two areas of production: the Kimco papers and the Cafaro leases.  Each merits separate discussion.

### a.      Kimco Papers

The Kimco papers arise out of a settlement of unrelated litigation between Best Buy and one of its other landlords.  The settlement involves what appears to be a less common means for payment of insurance charges in commercial leases.

In ordinary circumstances, a commercial landlord charges the tenant on a "pass through" basis.  This term means that the landlord acquires insurance for the tenant, who pays an actual pro rata share of the cost of insurance.  By comparison, the Kimco settlement purportedly has a

"fixed payment" scheme where Best Buy pays a fixed per-square-foot charge.[1]  Unlike a pass through, this charge is not tied to any insurance costs paid by the landlord.  (*See* Exh. 1.)[2]

In a deposition on September 30, 2007, a designee for Best Buy testified that it only paid for insurance on a pass through basis.  (Exh. 2 at 398.)  The defendants learned about the Kimco papers through a deposition of a Best Buy employee in December 2007.  (*See* Exh. 3 at 184-85.)  The defendants then demanded the Kimco papers, which Best Buy evidently produced later that month.

Because Best Buy did not produce the Kimco papers earlier, the defendants argue, it may be withholding or concealing other leases or documents that provide a fixed payment scheme for insurance charges.

If the defendants are correct, and undisclosed documents substantively explain how the fixed charges are calculated, then withholding of such documents plainly violates the September 5 order.  But this violation causes them no substantial prejudice.  The defendants' leases provide for a pass through of their insurance costs.  The fixed payment scheme in the Kimco settlement, by comparison, is not tied to the landlord's insurance costs in any way.[3]

---

[1] Best Buy complains that the defendants have publicly disclosed the Kimco papers, and described the content of the Kimco settlement, in violation of the protective order in this matter. But Best Buy has not requested any relief for this violation, and for that matter, it discusses some content of the Kimco settlement in its own publicly filed documents.  To the extent the parties discuss these or other sealed papers in public filings, this Court concludes there are no substantial concerns about confidentiality, and so limited discussion is appropriate here.

[2] Exhibits are cited in an appendix at the end of this report and recommendation.

[3] This Court notes that the testimony by the Best Buy designee at the September 30 deposition was not completely accurate.  But this inconsistency does not influence whether the defendants suffered substantial prejudice here.

This practice, therefore, is immaterial to whether the defendants improperly overcharged their insurance costs.  For this reason, sanctions are not appropriate for any purported violation here.

### b.      Cafaro Leases

In a response to a request for admission, Best Buy denied that it had knowledge of any first dollar programs operated by its other landlords.[4]  This position was purportedly confirmed in several ensuing depositions.[5]  But after production of leases was ordered on October 16, Best Buy disclosed the Cafaro leases on October 29, 2007.  (Exh. 4.)  These leases, by their express terms, required Best Buy to make payments under a first dollar program.  (Exh. 5 at 18.)  After this discovery, the defendants sought further documents about Best Buy's understanding of this program.

The record does not clearly indicate whether such production was forthcoming.  From a letter by its counsel on November 27, 2007, it may be inferred that aside from the Cafaro leases themselves, Best Buy did not promptly supply documentation explaining the Cafaro first dollar

---

[4] The defendants devote substantial discussion to this request, Request for Admission No. 3 of their second set of requests for admission.  They do not, however, seek sanctions based on the answer to this request.  When a party denies a request for admission, and the adverse party proves at trial that the admission is true, then under Rule 37(c)(2), the adverse party may request fees and costs incurred in making such proof.  For this reason, a sanction pursuant to this request for admission is premature.  *See In re Stauffer Seeds, Inc.*, 817 F.2d 47, 49 (8th Cir. 1987).

[5] The defendants quote both the response to the request for admissions, and various excerpts from these depositions, in their motion for sanctions.  Although there is no reason to doubt that the defendants are accurately quoting these sources, they are not included as exhibits with their motion for sanctions.

program, other than the leases themselves.  (Exh. 6.)  Neither side offers any evidence regarding

the substance of Best Buy's ensuing production regarding the Cafaro first dollar program.[6]

Based on the November 27 letter, this Court concludes that Best Buy had documents that

substantively explained charges under the Cafaro first dollar program.  In accordance with the

September 5 order, the documents should have been produced on or before October 5.  Yet they

were evidently withheld until at least November 2007, and had the defendants not received the

Cafaro leases, documents about the Cafaro first dollar program might never have been disclosed.

There is ample reason to find a willful violation here.  For instance, the November 27

letter states that production about the Cafaro first dollar program was unneeded because the

defendants did not explain how such documents "can possibly be relevant."  (Exh. 6 at 2.)  This

representation is disingenuous, given the significance of the defendants' first dollar program in

this litigation.  Best Buy also disregards the September 5 order, which considered and decided

the relevancy objection.  Its resistance to discovery, on grounds already decided by this Court in

an order, is willful.

Best Buy counters that its omission, if any, was inadvertent.  It contends that the Cafaro

leases consisted of only 3 out of the 430 that were disclosed, implying that even a diligent search

would not uncover the Cafaro first dollar program.

The record shows Best Buy persisted in conducting searches by having certain employees

check tangible documents in their custody.  (*See* Exh. 7 at 1-2; *see also* Exh. 8 at 1-2.)  Then at

the January 20 hearing, Best Buy acknowledged its lease documentation was kept in electronic

form, but it was unable to say whether such documentation was searchable.

---

[6] Best Buy claims that it produced documents regarding the Cafaro leases on September 24, 2007
and October 5, 2007.  There is nothing in the record that makes it possible to verify this claim.
Nor is it possible to assume that the documents in the September 24 and October 5 production
are coextensive with those disclosed pursuant to the November 27 letter.

It is deeply troubling that Best Buy did not undertake this inquiry during fact discovery. This Court has often stressed that the discovery obligation reaches both tangible and electronic sources. Had Best Buy diligently examined its electronic sources, and the feasibility of targeted searching,[7] it may have efficiently located important, responsive documents. Its failure to do so here can only be deemed a willful decision to avoid its discovery obligations.

### 3.   Sanction

Having determined there is a violation for which sanctions are appropriate, the remaining question is to decide an appropriate sanction. Setting aside the defendants' general petition for fees and costs, they propose various sanctions, which may be framed as follows:

- Dismissal of Best Buy's claims for fraud and breach of fiduciary duty.

- A conclusive presumption that Best Buy knew of the defendants' first dollar program and thus it had no reason to rely on their representations about insurance; or in the alternative, that Best Buy be precluded from introducing evidence in these areas.

- Depositions of four named Best Buy employees, and further deposition of another three employees, regarding the Cafaro leases and the Cafaro first dollar program.[8]

---

[7] The parties have consistently disputed whether Best Buy should have conducted term searches when responding to discovery. Although this Court recognizes that term searches may be one way to efficiently target e-discovery, this determination is not intended to suggest that Best Buy had a generic obligation to conduct term searches. The difference here is, if term searches in particular directories will quickly locate responsive documents, a party cannot use ineffectual or inefficient discovery methods and later claim that its efforts are adequate.

[8] In parts of their supporting memorandum, the defendants request further depositions separately, without relating it to a particular violation of a court order. Because this relief is plainly sought in connection with the defendants' arguments about the Cafaro leases, this sanction is properly addressed here.

This Court thinks it enough to note, without further discussion, that dismissal is an unnecessarily harsh sanction here.  *Cf. Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817 (8th Cir. 2001) (upholding dismissal where misconduct "went to the core of the trial preparation process").

The proposed evidentiary sanctions are based on an inference that, since Best Buy did not produce evidence of its understanding about the Cafaro first dollar program, Best Buy must have had a comparable and substantial understanding of the defendants' first dollar program.  This inference, however, unreasonably distorts the record.  The Cafaro leases expressly disclose a first dollar program; the defendants' leases do not.  For this reason, this Court concludes that an evidentiary sanction is inappropriate.

Further depositions are not among the sanctions expressly described by Rule 37(b)(2)(A).  Although this sanction is not commonly imposed, it is plain that a court has discretion to impose such a sanction under the rule.  *See LeGrande v. Adecco*, 233 F.R.D. 253, 257 (N.D.N.Y. 2005); *Wauchop v. Domino's Pizza, Inc.*, 143 F.R.D. 199, 201-02 (N.D.Ind. 1992).  As proposed by the defendants, further depositions are an appropriate means to remedy the violation by Best Buy, as it allows the defendants to inquire about the Cafaro first dollar program.  This Court recommends this sanction here.

## D.    Underlying Data for Decision to Audit Disputed Leases

The defendants argue that Best Buy has not produced the underlying data that provided the basis for its decision to audit the disputed leases in this litigation.  To the extent Best Buy has produced such data, they argue, it is corrupt or incomplete.  They propose that, because such data is not forthcoming, Best Buy should be required to produce its entire SLIM database, which it uses to track property costs.

This argument originates from this Court's order of January 5, 2007, which required Best Buy to disclose "leases and insurance policies, as well as analyses and other documents related to the costs paid under them, that provided the basis for its decision to proceed with the current litigation."  At a motion hearing on October 31, 2007, this Court added that in accordance with this obligation, Best Buy was not required to supply reports that might have been generated by the SLIM system in the past.

The defendants make a nominal showing that Best Buy failed to comply with this order. Without citing to the record, the defendants claim that Best Buy only disclosed SLIM reports for thirty-four of the sixty-nine lease years at issue.  Assuming that this representation is correct, the defendants do not explain what data in the missing years Best Buy may have used in its decision to proceed with this litigation.

Best Buy counters its production of the underlying data is complete, and this position has support in the record.  Correspondence from Best Buy indicates that it audited leases at random, and it may be inferred from other correspondence that Best Buy saved SLIM reports that formed the basis for its decision to audit.  (Exhs. 9, 10.)

It seems unlikely, as the defendants imply, that Best Buy would enter data and run reports from SLIM, use that  information when it decided to proceed with litigation, but not save the relevant reports.  It is more credible that Best Buy audited some, but not all, of the defendants' leases before it made the decision to proceed with this litigation.  Consistent with the January 5 order, Best Buy was justified in limiting its production to those documents that actually formed the basis for its decision to litigate.  For these reasons, sanctions are not appropriate here.

Notwithstanding this result, the defendants raise two incidental disputes in this area.  One involves the capabilities of the SLIM system and whether Best Buy was able to generate reports

for previous lease years.  In the litigation leading to the October 31 order, Best Buy represented that it could not generate new SLIM reports for past lease years, because such reports would not accurately portray its knowledge at the time.  (Exh. 11.)  The defendants later learned, through a subsequent deposition, that Best Buy could generate reports for those lease years.  (*See* Exh. 12 at 33.)

Though the defendants argue otherwise, there was no substantive inconsistency between the representations in October and the information disclosed in the ensuing deposition.  Best Buy did not deny it could run a report; instead, it stated that such a report would not be accurate.  Although the representations by Best Buy might be viewed as parsimonious, they are not false.

More importantly, Best Buy was concerned that by running new reports, the defendants might use the reports to show knowledge Best Buy had in the past, even if the reports were not run at that time.  At the January 15 motion hearing, Best Buy has further indicated that a critical element of the report, which shows the audit status of a particular property, may not accurately show what might have appeared on the report in the past.  This representation is consistent with other information in the record.  (*See* Exh. 11.)

As noted earlier, the January 5 order only requires Best Buy to produce the information that formed the basis for its decision to bring the current litigation.  To the extent the defendants seek reports from SLIM, which may not accurately reflect why Best Buy made this decision, the reports fall outside the scope of the January 5 order.

The defendants' other incidental dispute involves purported redactions that appear on the SLIM reports that Best Buy did produce.  As the defendants correctly note, a black box appears in the corner of the reports.  (Exh. 13.)  When they complained about the box, Best Buy provided a separate sheet with the contents:  a code showing the audit status of the property.  (Exh. 14.)

Best Buy also explained the redactions were unintentional, due to problems copying the report, rather than an intentional effort to conceal data. (Exh. 10.)

This Court finds that Best Buy has made reasonable, good faith efforts to provide legible copies of the reports. And this concern does not implicate whether Best Buy complied with the January 5 and October 31 orders.

**E.    Information Regarding Captive Insurance and Self-Insurance Programs**

The defendants next contend Best Buy has not produced documents regarding its internal captive insurance and self-insurance programs. In this area, the defendants claim that Best Buy improperly limited its production and made no reasonable effort to search electronic sources.

**1.    Order**

This argument proceeds from the September 5 order, relevant portions of which may be summarized as follows.

> [In one discovery request, the defendants seek] documents regarding self-funded escrows or self-funded insurance, purportedly like the defendants' first dollar program, maintained by *any* person. [Another request] seeks all documents about self-funded insurance and captive insurance programs maintained by Best Buy.
>
> [Four other] requests . . . may all be viewed as a subset of the documents sought through [the preceding requests]. . . .
>
> \* \* \*
>
> All of the discovery sought through these requests is plainly relevant. . . .
>
> The requests at issue here, however, are incredibly broad in scope. In the case of [one request], the defendants ask about programs maintained by third parties. The other requests contemplate every potential detail of any self-funded escrow or captive insurance program operated by Best Buy.

12

> Once again, this Court deems it appropriate to craft limits on the scope of this discovery. To the extent that Best Buy has documents that explain the policies underlying its self-funded escrow or captive insurance programs, those documents shall be disclosed. It shall also supply documents that substantively explain how internal escrow or captive insurance programs are funded, including any documents that supply guidance about appropriate funding levels.

The defendants claim, and Best Buy evidently does not dispute, that it limited its disclosures in this area to what it called "high level" documents. (Exh. 15; Exh. 16 at 8-9.) Regardless of how the parties characterize this production, however, the analysis must focus on whether Best Buy supplied documents that substantively explain its captive insurance or self-insurance programs.

### 2.   Alleged Violations

The record shows that when production was due on October 5, 2007, Best Buy supplied forty-nine pages. (Exh. 17.) Much of this production consists of accounts in table format, which without context, are not particularly meaningful. (*See* Exhs. 18, 19.) This production includes documents about a captive insurance company operated by Best Buy, which appear to have been generated in order to comply with insurance regulations in Vermont. (*See* Exhs. 20, 21.)

In their supporting memorandum, the defendants note that Best Buy supplemented this production on October 24, 2007. The record does not include this production. At the January 15 motion hearing, the defendants indicated that this production consisted of some documents kept by a third party—Best Buy's external counsel. This Court is not persuaded that the October 24 production is material here.

By a letter through its counsel on November 8, 2007, Best Buy said that its production in this area was complete. Best Buy challenged the defendants to explain why "the documents that we produced failed to provide the information described in the [September 5] order, as we would certainly remedy that." (Exh. 22 at 2.) And by another letter through its counsel on December

10, 2007, Best Buy claimed that the defendants did not make good faith efforts to resolve this question, based on their failure to identify "specific issues" upon which "a compromise could be forged." (Exh. 8 at 3.)

Best Buy does not cite anything in the record to support its assertion that its production complies with the September 5 order. In its memorandum opposing sanctions, it asserts that the defendants refused to identify deficiencies in the production and that they would not participate in a discovery conference on these matters. (Exh. 16 at 9-10.)

At the January 15 motion hearing, Best Buy represented that if its production in this area was deficient, it was willing to produce a disk with further documents. This Court ordered that the disk be turned over immediately. The contents of this disk are not part of the record.

This Court finds that Best Buy's production is inadequate. From the meager number of documents, the defendants might deduce some details about how Best Buy operated its captive insurance program, and how it was funded. But this production lacks meaningful explanation of the captive insurance program, such as why it initiated the program in the first place or how it decided to operate the program. Best Buy, a large corporation, cannot realistically suggest that it commenced such a program without discussing such policies. Because the production is patently deficient, this Court concludes that Best Buy willfully violated the September 5 order.

As its November 8 and December 10 letters indicate, Best Buy refused to supplement its production until the defendants identified deficiencies. But under any reasonable interpretation of the September 5 order, Best Buy had ample reason to know its production was deficient. And it was patronizing for Best Buy to require that the defendants identify deficiencies that were self-evident. Furthermore, Best Buy implies that the defendants were not entitled to the full scope of production required under the September 5 order, and that they should have agreed to narrower

categories of documents.  In these circumstances, the defendants' purported failure to pursue the issue through discovery conferences is fully excusable.

The conduct at the January 15 hearing is also troubling.  When Best Buy offered to cure the alleged deficiencies in its production, it acknowledged that some additional disclosures might be appropriate.  Yet by doing so at that time, it essentially denied this Court any opportunity to assess the adequacy of the new production.  This gesture seems to be a calculated effort to avoid sanctions rather than a meaningful effort to comply with the September 5 order.

### 3.    Sanction

As discussed beforehand, the sanction must be appropriately tailored to the violation that occurred.  The underlying problem is that, because of Best Buy's omissions about its captive insurance program, the defendants are unable to obtain discovery about Best Buy's knowledge of insurance practices in commercial leases.

In such circumstances, a court may appropriately direct that an adverse inference be taken from the failure to produce.  *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267-68 (2d Cir. 1999); *cf. Bass v. General Motors Corp.*, 150 F.3d 842, 850-51 (8th Cir. 1998) (concluding that an adverse inference was a suitable sanction for spoliation of evidence).  This Court accordingly recommends that it be conclusively presumed Best Buy has withheld evidence about its captive insurance program; and from this presumption, a factfinder may take negative inferences about Best Buy's knowledge of insurance practices in commercial leases.

### F.    Deposition of Jane Borden

In their fourth and final distinguishable argument, the defendants seek leave to conduct a deposition of Jane Borden.  This argument is founded on an oral ruling at a hearing on October 31.  This Court directed Best Buy to make one of its employees, Zahir Siddiqui, available for a

deposition.  This Court added that if new information was revealed, the defendants had leave to seek sanctions, including further fact discovery.

At Siddiqui's ensuing deposition on October 23, 2007, the defendants asked about the "Cyncynatus memorandum."  (Exh. 23 at 93, 98-100.)  Jerry Cyncynatus, an employee of the defendants, originally prepared it in response to tenant inquiries about the defendants' first dollar program.  (Exh. 24.)

The record shows Siddiqui received the memorandum from Borden, external corporate counsel for Best Buy, on March 29, 1999.  In an accompanying fax, Borden indicates, "Please review the attached information regarding a self-funded insurance program of a prospective landlord.  Please call me with your comments."[9]  (Exh. 23 at 100; Exh. 25.)

When this fax was originally disclosed to the defendants, this text was redacted, based on Best Buy's assertion of attorney-client privilege.  At Siddiqui's deposition, Best Buy reversed its position and concluded the fax did not qualify for the privilege, providing the defendants with an unredacted copy.  Until the deposition, the defendants were unaware of the relationship between Borden and Siddiqui, and the defendants had no reason to believe that Borden might know about the Cyncynatus memorandum or the first dollar program.

Based on this newly acquired information, the defendants seek leave to depose Borden.  This Court finds that, consistent with the October 31 order, the defendants have shown that they acquired new information at the deposition of Siddiqui, and they are entitled to obtain sanctions in the form of further fact discovery.  The deposition of Borden, moreover, is reasonably targeted toward the newly acquired information and is wholly appropriate relief here.

---

[9] The defendants cite to two copies of the fax where this text is redacted.  It appears that the defendants intended to include an unredacted copy of the fax but mistakenly omitted it.  Because the redacted text was read in full during Siddiqui's deposition, it can be quoted accurately here.

In its opposing memorandum, Best Buy does not oppose deposition of Borden altogether, but it will only agree to the deposition with certain limits.  It argues these limits must be enforced if the deposition is allowed to go forward.  The parties' actual dispute, therefore, is not whether Borden should be deposed, but whether the parties have a discovery agreement that limits or prevents this deposition.

Best Buy argues that, under the parties' discovery agreements, depositions after the fact discovery deadline must be limited to matters learned after the close of discovery.  To prove such an agreement, it chiefly relies on two instances of correspondence from the defendants.

One is a November 2, 2007 letter, in which counsel for the defendants stated,

> You continue to ask us to repeat what we have already identified as the limited topics [to be raised at the deposition of Borden].  These limited topics are based upon and limited to the logical pursuit of discovery about newly produced information . . . .  Simply put, although Ms. Borden was known to have sent Mr. Siddiqui a fax (that is all that was known on this topic), the information that was "newly discovered" during the Siddiqui deposition last week, is the fact that Ms. Borden, in March 1999, specifically requested that [Siddiqui] provide comments to her . . . about the 1998 Cyncynatus memorandum and [the first dollar program].

(Exh. 26 at 1-2.)  The other is a letter from December 20, 2007, where counsel for the defendants proposed that certain depositions be "limited to the new evidence and that which flows from it."  This letter goes on to add, "As to Borden, the Court will have to decide if there is any limitation on scope."  (Exh. 27.)

From these representations, Best Buy claims the defendants agreed to limit the deposition of Borden to issues "logically flowing from" disclosures that occurred since the formal close of fact discovery in September 2007.  When the defendants received the redacted version of the March 29 fax in August 2007, the unredacted portions still indicated that Borden sent a copy of the Cycnynatus memorandum to Siddiqui.  For this reason, Best Buy contends, the defendants

knew of the relationship at the time and could have pursued the issue prior to the close of fact discovery.

Assuming the defendants did agree to limit their inquiry to newly discovered evidence, this agreement does not bar them from deposing Borden about the Cyncynatus memorandum. Even though the defendants knew of the March 29 fax before the close of fact discovery, the significance of the fax, and Borden's potential knowledge about the first dollar program, was not truly evident until the redacted text was revealed in October 2007.

It is specious for Best Buy to suggest the defendants cannot pursue this newly discovered line of inquiry. This Court also need not recognize an agreement by the parties, assuming there was one, that limits this Court's intrinsic authority to enforce the October 31 order. As a result, the deposition of Borden is appropriately ordered without limitation.

## G.      Scheduling and Discovery Management

Best Buy has its own motion to modify the pretrial scheduling order. Due to the delays caused by current motion for sanction, it seeks additional time to conduct expert discovery, with other deadlines extended accordingly. Because this Court is proceeding by a report, the district judge will likely require some time to consider the parties' objections, which means some further delay in this matter is inevitable.

To briefly review some procedural history, the defendants requested a stay of the time for submitting their rebuttal experts' reports. This Court granted the stay, for good cause shown, by an order on December 20, 2007. That order further instructed the defendants to prepare rebuttal reports and, depending on the outcome of the pending motion for sanctions, to be ready to amend or disclose them on short notice.

Because the defendants have prevailed on much of their motion for sanctions, this Court will not require the defendants to disclose their rebuttal reports immediately.  This Court instead recommends that the defendants do so fourteen days after the district court rules on this report.  As Best Buy cannot be expected to conduct expert depositions without these reports, it has good cause for a comparable extension of time for expert discovery, with other deadlines modified accordingly.

Regardless of how the district judge rules on this recommendation, however, it is prudent to note one other thing:  fact discovery is over.  Consistent with this Court's order of November 28, 2007, the parties have had ample opportunity to compel discovery and seek sanctions for violation of discovery orders.  Other than motions incident to the sanctions that the district judge may order pursuant to the current motion, no further motions on fact discovery will be permitted.

## H.    Recommendation

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.     The defendants' motion for sanctions (Doc. No. 550) be **GRANTED IN PART AND DENIED IN PART,** consistent with the directions of this report.

2.     Best Buy's motion to modify the pretrial scheduling order (Doc. No. 561) be **GRANTED,** consistent with the directions of this report.

3.     No later than twenty-one days after issuance of the order adopting this report, Best Buy shall do the following:

a.     Make Fred Karp, Marlys Gould, Paul Olsen, and Jane Borden available for seven hours' deposition, without limitation, consistent with Rule 30(d)(1).

      b.      Make Kate Kuntz, Terrance Deegan, and Zahir Siddiqui available for three hours' additional deposition, without limitation.

4.      No later than fourteen days after issuance of the order adopting this report, the defendants shall disclose their rebuttal expert reports; and no later than thirty-five days after issuance of the order, the parties shall complete expert discovery.  The Magistrate Judge shall promptly issue an amended pretrial scheduling order consistent with this timeline.

5.      The factfinder be instructed as follows:

      a.      Best Buy willfully failed to produce evidence about its captive insurance program.

      b.      Because Best Buy has failed to do so, it may be inferred that Best Buy has additional knowledge about insurance practices in commercial leases.

6.      No later than twenty-eight days after the issuance of the order adopting this report, the defendants shall file an affidavit itemizing *reasonable* fees and costs that are compensable pursuant to their motion for sanctions.  A determination of the fees and costs to be awarded, if any, shall be committed to the Magistrate Judge.

Dated this 14th day of February, 2008.

                  s/ *Jeanne J. Graham*
                 JEANNE J. GRAHAM
                 United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 28, 2008**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination

of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

## APPENDIX

Exh. 1        Agreement [undated] [Exh. 15, Doc. No. 567] (filed under seal).

Exh. 2        Depo. of K. Kuntz, Sept. 24, 2007 [Exh. 5, Doc. No. 567] (filed under seal).

Exh. 3        Depo. of B. Moore, Dec. 4, 2007 [Exh. 21, Doc. No. 567] (filed under seal).

Exh. 4        Letter of J. Mintzer to J. Lesny Fleming, Oct. 29, 2007 [Decl. of J. Mintzer, Exh. 7, Doc. No. 584].

Exh. 5        Lease [undated] [Exh. 8, Doc. No. 567] (filed under seal).

Exh. 6        Letter of J. Mintzer to T. Feher, Nov. 27, 2007 [Exh. 13, Doc. No. 567].

Exh. 7        Letter of J. Mintzer to J. Lesny Fleming, Nov. 1, 2007 [Exh. F, Doc. No. 553].

Exh. 8        Letter of J. Mintzer to J. Lesny Fleming, Dec. 10, 2007 [Exh. Q, Doc. No. 553].

Exh. 9        Letter of T. Remus, Apr. 26, 2005 [Exh. 29, Doc. No. 567] (filed under seal).

Exh. 10       E-Mail of J. Mintzer to T. Feher, Dec. 25, 2007 [Exh. 29, Doc. No. 567] (filed under seal).

Exh. 11       Letter of J. Mintzer to J. Lesny Fleming, Oct. 9, 2007 [Exh. C, Doc. No. 488; Exh. 12, Doc. No. 564].

Exh. 12       Depo. of J. Hensiak, Dec. 5, 2007 [Exh. 23, Doc. No. 567] (filed under seal).

Exh. 13       Report [undated], [BBYDDR-027414] [Exh. 29, Doc. No. 567] (filed under seal).

Exh. 14       Table [undated] [Exh. 29, Doc. No. 567] (filed under seal).

Exh. 15       Letter of D. Kobasic to R. Machson & J. Mintzer [Exh. A, Doc. No. 553].

Exh. 16       Pl.'s Mem. of Jan. 8, 2008 [Doc. No. 581].

Exh. 17       Exh. 25, Doc. No. 567 (filed under seal).

Exh. 18        Table ("Policy Register") [undated], [BBYDDR-061410] [Exh. 25, Doc. No. 567] (filed under seal).

Exh. 19        Table ("Captive FY08 Worksheet") [undated], [BBYDDR-061459] [Exh. 25, Doc. No. 567] (filed under seal).

Exh. 20        Report ("CCL Insurance Company Regulatory Business Plan") [undated], [BBYDDR-061441 – 061444] [Exh. 25, Doc. No. 567] (filed under seal).

Exh. 21        Letter of R. Bourdon to L. Crouse, Mar. 23, 2006 [BBYDDR-061416] [Exh. 25, Doc. No. 567] (filed under seal).

Exh. 22        Letter of J. Mintzer to J. Lesny Fleming, Nov. 8, 2007 [Exh. 10, Doc. No. 584].

Exh. 23        Depo. of Z. Siddiqui, Oct. 23, 2007 [Exh. 27, Doc. No. 567] (filed under seal).

Exh. 24        Mem. of J. Cyncynatus, July 21, 1998 [Exh. 28, Doc. No. 567] (filed under seal).

Exh. 25        Fax of J. Borden to Z. Siddiqui, Mar. 29, 1999 [Exh. 28, Doc. No. 567] (filed under seal).

Exh. 26        Letter of J. Lesny Fleming to J. Mintzer, Nov. 2, 2007 [Exh. G, Doc. No. 553].

Exh. 27        Letter of T. Feher to J. Mintzer, Dec. 20, 2007 [Exh. 16, Doc. No. 572].