## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Best Buy Stores,**

        Plaintiff,

v.

**Developers Diversified Realty Corp., et al.,**

        Defendant.

**Civil No. 05-2310 (DSD/JJG)**

**REPORT
AND
RECOMMENDATION**

---

This litigation came before the undersigned on January 7, 2011 on motions, by plaintiff Best Buy Stores (Best Buy), for costs (Doc. No. 749), attorney fees (Doc. Nos. 756, 815), and for review of a cost judgment (Doc. No. 793). Joel A. Mintzer, Esq., appeared on behalf of Best Buy. Steven S. Kaufman, Esq., and Jennifer A. Lesny Fleming, Esq., appeared on behalf of the defendants. The motions are referred for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1.

## I.     Introduction

To briefly review, this action arises out of the leases between Best Buy and the landlords of various Best Buy stores. A different landlord is party to each lease. The defendants consist of these individual landlords, as well as the landlords' parent entity, Developers Diversified Realty (hereinafter Developers Diversified). Alleging that the defendants overcharged for insurance due under the leases, Best Buy brought actions for fraud, breach of contract, breach of fiduciary duty, and declaratory judgment.

Incident to its claims for fraud and breach of fiduciary duty, Best Buy moved to amend its complaint and plead punitive damages. By an order on November 16, 2007, this Court denied the motion. Best Buy objected, and through an order on January 25, 2008, District Judge David

S. Doty overruled the objection. In the meantime, in an order on November 21, 2007, Judge Doty considered a motion to dismiss various claims. Regarding the fraud claims, the motion was granted as to nine defendants and denied as to seven others.

The parties subsequently filed cross motions for summary judgment, which Judge Doty decided in an order on July 14, 2009. Holding that the defendants' insurance charges exceeded what was allowed under the leases, this order determined that the defendants were liable for breach of contract and declaratory judgment. Summary judgment was granted against the claims for breach of fiduciary duty, as well as some elements of the remaining fraud claims.

Having obtained this result, Best Buy dismissed its surviving fraud claims and moved for a determination of its damages. In orders on June 8, 2010 and November 4, 2010, Judge Doty calculated the insurance overcharges as to each lease, respectively entering judgments against the fifteen landlord defendants. Best Buy recovered approximately $1.1 million. The parties are currently pursuing appeals before the Eighth Circuit.

Best Buy now seeks to recover its fees and costs. Through two motions for attorney fees, Best Buy invokes various lease provisions that grant fees to the prevailing party. Because some of those provisions grant costs as well, Best Buy also moves for costs. And Best Buy moves for review of the cost judgment, arguing that the Clerk improperly excluded items that were taxable. In total, Best Buy requests approximately $2.0 million in attorney fees and another $200,000 in additional costs.

## II.     Discussion

### A.     Motions for Attorney Fees

In its first motion for attorney fees, Best Buy sought to recover certain fees incurred from the outset of the lawsuit through the entry of the June 2010 judgment. After the entry of the

November 2010 judgment, Best Buy brought a second motion, seeking fees for the period from July through November 2010. Aside from the differing timeframe, both motions involve the same legal and factual questions.

### 1. Choice of Law

The initial question is the proper choice of law. Of the fourteen leases with attorney fee provisions, nine include choice-of-law provisions. In accordance with the analysis Judge Doty made in his order of December 8, 2006, these choice-of-law provisions indicate the controlling law for their respective leases. *See generally Warren E. Johnson Cos. v. Unified Brand, Inc.*, — F.Supp.2d —, 2010 WL 3119256 at *3 (D.Minn. 2010).

For the five leases that lack choice-of-law provisions, the parties have not indicated the controlling law, and therefore, the law of this forum is applied. *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n. 3 (8th Cir. 2003) (quotation omitted).

Consistent with these rules, the controlling jurisdictions are Arizona, Arkansas, Colorado, Georgia, Massachusetts, Minnesota, Tennessee, and Texas. For some issues, these states' laws are in general agreement, and this Court will cite representative cases from various states. For many other issues, however, there is little or no applicable law from each state. In this scenario, this Court will cite what authority is available.

### 2. Scope

Some of the parties' arguments involve the scope of the attorney fee provisions. They dispute whether, under the terms of the fee provisions, Best Buy can recover the fees it incurred while prosecuting its tort claims.[1] The parties also contest whether fee liability is separate, with

---

[1] Although a preponderance of Best Buy's tort claims failed, either as a result of dismissal or summary judgment, the defendants do not suggest that these losses affect Best Buy's status as a prevailing party under the leases' fee provisions.

each landlord only being liable for the fee provisions in its own leases, or whether this liability should be joint and several as to all the defendants.  And the parties raise other miscellaneous issues.

### a.    Tort Claims

When examining the scope of the fee provisions, this Court employs ordinary principles of contract interpretation.  *Accusoft Corp. v. Palo*, 237 F.3d 31, 61 (1st Cir. 2001) (applying Massachusetts law).  To decide whether the fee provisions cover tort claims, therefore, this Court must discern the parties' intent, as expressed by the language in each provision.

The Ahwatukee lease allows fees for "any suit against the other which is in any way connected to [the] Lease[.]"[2]  The Cool Springs lease permits fees in "any action for any relief against the other[,]" and similarly, Nassau Park and Overlook grant fees in "any action for any relief against the other . . . arising out of [the] Lease[.]"  Although there does not appear to be apposite, published case law from the states that govern these leases, the broad reach of these fee provisions is plain.  They cover any legal action that relates to the leases, including tort claims.

The Flatiron lease states that, "[i]n the event of a dispute between Tenant and Landlord with regard to this Lease," fees may be recovered.  Although this language is not as expansive as that in the other four leases discussed above, the word "dispute" is generic, and it could refer to any sort of claim.  This language must also be construed to include various theories, such as tort claims, involving the lease.  *Cf. Rocky Mountain Microsystems, Inc. v. Public Safety Systems, Inc.*, 989 F.Supp. 1352, 1358 (D.Colo. 1998) (concluding that, where a fee provision included

---

[2]    The leases' attorney fee and cost provisions are listed in Appendix A of this report and recommendation.

"any dispute arising out of" breach of a lease, this included claims for both breach of contract and quantum meruit).

The remaining nine leases all have substantially similar language. For instance, the Spring Creek lease provides,

> In the event Tenant or Landlord defaults in the performance of any of the terms . . . in this Lease and the other party places in the hands of any attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay on demand the other party's actual and reasonable attorney fees . . . .

The critical term here is "default." This provision plainly indicates that, in the event of default, the prevailing party can recover attorney fees.

From the term "default," it is possible to infer that the parties intended to limit their fees to the default alone, meaning those fees connected to the breach of the lease. But the provision also does not say whether fees must relate to the default. In the alternative, it is also reasonable to conclude that, once a default occurs, fees can be recovered for any reason. There does not appear to be apposite, published case law that might help resolve this ambiguity.

This Court concludes that, because the provision is entirely silent about what sort of fees may be recovered, it should be construed to include tort claims. But in the alternative, even if the provisions are construed narrowly, certain tort claims may nevertheless be within their scope.

For its tort claims, Best Buy principally alleged that the defendants were fraudulently overcharging for insurance. For this reason, these torts would also constitute a breach or default of the terms of the lease. *Cf. Oat Note, Inc. v. Ampro Equities, Inc.*, 141 S.W.3d 274, 281 (Tex. App. 2004) (holding that, where fee provision only mentioned "default in the performance" and prevailing party established fraud but no default, fee provision did not apply). Because Best

Buy's tort claims specifically implicate default of the lease, then even with a narrow interpretation, those claims are within the scope of the fee provisions.

### b.    Joint and Several Liability

Best Buy contends that, if any individual defendants incur fee liability pursuant to their respective leases, then this liability should be joint and several between all the defendants. The defendants respond that this improperly transfers liability to certain landlords with no or minimal liability.

Because Best Buy invokes a contractual right to attorney fees, the underlying contracts control fee liability. Without a theory of vicarious or third-party liability, a nonparty to a contract cannot be held liable under that contract. *See generally Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 297, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

Consistent with this principle, several of the controlling jurisdictions here recognize that only parties to a contract bear contractual fee liability. So where several entities are coparties in litigation, and one is liable under a contractual fee provision, the liability is not borne jointly and severally with other coparties. *Broderick v. McElroy & McElroy, Inc.*, 961 P.2d 504, 506 (Colo. App. 1997); *Accurate Printers, Inc. v. Stark*, 671 S.E.2d 228, 233 (Ga. Ct. App. 2008); *Palatine Nat'l Bank v. Olson*, 366 N.W.2d 726, 732 (Minn. App. 1985).

To support its argument for joint and several liability, Best Buy cites cases where attorney fees were awarded under 42 U.S.C. § 1988(b). *See, e.g., Carhart v. Stenberg*, 192 F.3d 1142, 1151-52 (8th Cir. 1999). This statute allows a prevailing plaintiff, in certain federal civil rights actions, to recover attorney fees. Consistent with the remedial purposes of civil rights actions, courts have discretion to make § 1988 fee awards joint and several between all wrongdoers. *See*

*generally Council for Periodical Distributors Ass'ns v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987).  Even in this context, joint and several liability is not mandatory.  *See, e.g., Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (upholding allocation of separate fees between codefendants); *Jenkins by Agyei v. Missouri*, 838 F.2d 260, 266-67 (8th Cir. 1988) (same).

In any event, these authorities do not apply to the contractual fee provisions currently at issue.  Because the defendants can only bear fee liability pursuant to their respective leases, joint and several liability is inappropriate here.

### c.      Collateral Proceedings

The parties also dispute whether Best Buy can recover fees from litigation outside the current proceedings.  The dispute is traceable to *Developers Diversified Realty Corp. v. Vidalakis*, an action from the Northern District of Ohio.  In relevant part, the Vidalakis family asserted a counterclaim against Developers Diversified, arguing that it understated its revenues.[3]

Incident to their counterclaim, the Vidalakis family subpoenaed Best Buy's counsel, who supplied information about the same insurance practices that were the subject of the current litigation.  When Developers Diversified learned about the disclosure, it served its own subpoena against Best Buy's counsel, but this time counsel resisted.  Developers Diversified then moved to compel, but before the motion was decided, the underlying litigation settled and it withdrew the motion.

---

[3]      Citing attorney billing records submitted by Best Buy, the defendants argue that Best Buy is seeking attorney fees from other proceedings as well.  Best Buy counters that the defendants are misreading these billing records.  As this Court will explain later on, any fees incurred from unrelated or collateral proceedings are excluded from the recommended fee award here.

Best Buy contends that, because Developers Diversified acted in concert with the other defendants, it can recover attorney fees.[4] This argument fails for the same reason that joint and several liability does. Developers Diversified is not a party to the leases, and Best Buy has not provided a theory by which the leases' fee provisions can be imputed to Developers Diversified. As a result, Best Buy cannot recover attorney fees from the Vidalakis subpoena proceedings.

### d.    Appeal Fees

Through its second motion for attorney fees, Best Buy seeks to recover fees it incurred in connection with appeals to the Eighth Circuit. The defendants counter that, because Best Buy has not prevailed on appeal, no fees can be awarded.

After judgment was entered on June 8, 2010, the defendants filed an appeal on July 13, 2010 and Best Buy filed a cross-appeal on July 28, 2010. In an order on September 8, 2010, the Eighth Circuit dismissed both appeals for lack of jurisdiction, determining that there was no final appealable order. There was no decision on the merits, and for that matter, it appears that both sides committed the same jurisdictional error. The parties have since refiled their appeals, which remain pending.

Eighth Circuit Rule 47C indicates that, where attorney fees are sought in an appeal, that motion is properly filed before the Eighth Circuit. The purpose of this rule is to ensure that fee awards are decided by the court most familiar with the dispute. *Little Rock Sch. Dist. v. Arkansas*, 127 F.3d 693, 696 (8th Cir. 1997).[5] This violation alone provides sufficient reason to deny any appellate fees.

---

[4]    Best Buy also contends that, because Developers Diversified had improper motives for initiating the subpoena proceeding, the imposition of attorney fees is an appropriate sanction. As Best Buy has not moved for sanctions, this Court declines to consider such relief.
[5]    The *Little Rock School District* decision ultimately held that Rule 47C does not deprive district courts of jurisdiction to award appellate fees. 127 F.3d at 696. But even if district courts

This Court further recognizes that the July appeals were dismissed, without a decision on the merits, and that the parties have refiled their appeals. Best Buy cannot be deemed, under any reasonable interpretation, a prevailing party in the appellate proceedings to this point. For this reason, Best Buy cannot recover the appellate fees it has claimed here.

### e. Georgia Statutory Limits

For the two leases governed by Georgia law, the defendants contend that any attorney fee awards are limited by Ga. Code Ann. § 13-1-11(a). It provides in relevant part,

> Obligations to pay attorney's fees upon any note or other evidence of indebtedness . . . shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions: . . .
>
> (2)     If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00; and
>
> (3)     The holder of the note or other evidence of indebtedness or his or her attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to the payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, [etc.] has ten days from the receipt of the notice to pay the principal and interest without the attorney's fees. . . .

The defendants correctly observe that under *RadioShack Corp. v. Cascade Crossing II, LLC,* a recent decision from the Georgia Supreme Court, § 13-1-11 can be applied to commercial leases. 653 S.E.2d 680, 685 (Ga. 2007) (4-3 decision). But the court did not hold that § 13-1-11

have jurisdiction, this ruling does not compel district courts to hear fee motions that are properly initiated before the Eighth Circuit.

applies to all liabilities that arise in connection with a lease. Taking care to distinguish the facts of the case, the court said,

> The statute applies at least where, as here, past due rent is recovered, and the only other relief is declaratory and governs the future enforceability or amount of the tenant's rent obligation.

*Id.*

Other courts have separately observed that, if an action does not involve the collection of a "matured debt," then § 13-1-11 does not apply. *Ins. Indus. Consultants, Inc. v. Essex Invs., Inc.*, 549 S.E.2d 788, 794 (Ga. Ct. App. 2001); *OFC Capital v. AT Publishing, Inc.*, No. 04-11, 2007 WL 4557806 at *2 (D.Alaska Dec. 20, 2007).

The current litigation is founded on Best Buy's effort to recover insurance overcharges. Although this liability arises under the leases, it cannot be meaningfully characterized as a debt. As a result, it would be misleading to say that Best Buy is a "holder of [a] note or other evidence of indebtedness," or that Best Buy was a creditor engaging in efforts to collect a matured debt. *Cf.* Ga. Code Ann. § 13-1-11(a)(3); *TermNet Merchant Servs., Inc. v. Phillips*, 588 S.E.2d 745, 747 (Ga. 2003) (holding that prerequisites for collection of attorney fees under § 13-1-11 include a matured debt, ten days' notice of the opportunity to repay without incurring attorney fees, and collection of the debt by an attorney).

For the liabilities in this litigation, therefore, § 13-1-11 does not apply. This statute does not limit the attorney fees that Best Buy can recover under the Georgia leases.

### 3. Fee Calculations

#### a. General Principles

Having determined the scope of the fee provisions, this Court now must calculate the amount of fees. The leases uniformly indicate that the prevailing party is entitled to "reasonable

attorney fees." This comports with the law of the various controlling jurisdictions, which often emphasize that attorney fee provisions be interpreted reasonably. *See, e.g., McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 165 P.3d 667, 671 (Ariz. Ct. App. 2007) (2-1 decision); *Morris v. Belfor USA Group, Inc.*, 201 P.3d 1253, 1259 (Colo. App. 2008); *Wilson Mgmt. Co. v. Star Distributors Co.*, 745 S.W.2d 870, 873 (Tenn. 1988).

Although the controlling jurisdictions do not often consider reasonableness in the context of contractual fee provisions, reasonableness is a hallmark of their statutory fee provisions. For this reason, when cases examine reasonableness in a statutory context, these authorities can also be persuasive in interpreting contractual fee provisions.[6]

Some jurisdictions endorse the lodestar method as a suitable way to estimate reasonable attorney fees. Under this method, a court determines a reasonable number of hours to spend on the claims, and then multiplies this amount by a reasonable hourly rate. *See, e.g., Grubb & Ellis/ Centennial, Inc. v. Gaedeke Holdings, Ltd.*, 218 Fed.Appx. 390, 401-02 (6th Cir. 2007) (applying Tennessee law); *WHTR Real Estate L.P. v. Venture Distr., Inc.*, 825 N.E.2d 105, 110 (Mass. App. Ct. 2005).

Other factors guiding reasonableness include the time needed to effectively carry out the litigation, the amount in controversy, the difficulty of the issues, and the amount recovered. *All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 520-21 (8th Cir. 2009) (applying Arkansas law); *Atmel Corp. v. Vitesse Semiconductor Corp.*, 160 P.3d 347, 349 (Colo. App. 2007); *Milner v. Farmers Ins. Exchange*, 748 N.W.2d 608, 621 (Minn. 2008).

---

[6] The dearth of authority regarding contractual fee provisions is partly due to the fact that, in some of the controlling jurisdictions, a prevailing party in an action for breach of contract is entitled by statute to reasonable attorney fees. *See* Ariz. Rev. Stat. Ann. § 12-341.01; Ark. Code Ann. § 16-22-308; Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

According to the attorney billing records submitted by Best Buy, from the beginning of the litigation until it filed its second motion for attorney fees, its counsel and their staff spent nearly 7,600 hours working on the litigation. To put this figure into perspective, an attorney working fifty hours a week, fifty weeks a year would spend 2,500 hours working that year. So Best Buy proposes that more than three *years* was a reasonable amount of time to spend on this one lawsuit.

There are several obstacles to determining a reasonable amount of time here. The attorney billing records are voluminous, and there is no practical way to assess the amount of time that counsel devoted to any particular task. When summarizing the billing records in its papers, Best Buy rarely sets forth the hours it expended, but instead cites the dollar amounts billed for work on various stages of the litigation.

Setting aside these obstacles, this Court is well informed about the demands of this case. In the course of pretrial motion practice, this Court often considered the issues and evaluated the conduct and arguments of counsel. The parties were acrimonious, and they often did not engage in reasonable efforts to cooperate. This led to excessive and unnecessary litigation, and it caused undue complication of claims that were not that difficult.

Best Buy suggests that, to the extent its billings were excessive, this was prompted by the defendants' obstreperous conduct. Although this Court finds that their conduct is one factor that drove the time spent in this litigation, it is not the only factor. Best Buy shares responsibility for the tone of the litigation.[7]

_____

[7]     In a related vein, the parties devote considerable argument to settlement negotiations. The defendants contend that they offered reasonable settlements, and because Best Buy refused these offers, the resources devoted to the ensuing litigation were unreasonable. Best Buy, not surprisingly, counters that the settlement offers were unreasonable. This Court thinks it enough

Best Buy also had an obligation to consider whether its efforts were proportionate to the results it was likely to obtain. It had reason to know, not long after the outset of this litigation, that its pecuniary damages might be in the range of $750,000. Yet it spent time and resources that far exceeded this amount. Interpreting contractual fee provisions reasonably, there needs to be a plausible business relationship between attorney fees and the goal of the lawsuit. Otherwise, all attorney fee provisions do is subsidize unnecessary litigation, a manifestly unreasonable result.

Considering the litigation as a whole, from the initial complaint until the final judgments, this Court finds that 2,500 hours is a reasonable amount of time for Best Buy to have expended on its claims. Consistent with the prior rulings on the scope of the fee provisions, this omits the time spent on collateral proceedings or appeals. This figure also omits time Best Buy devoted to discovery practices that were sanctioned, as it is not reasonable for Best Buy to recover attorney fees for such conduct.[8]

The next task is the determination of a reasonable hourly rate. This Court often considers the value of work from federal attorneys, and this Court is well acquainted with the prevailing market rates in this District. Based on this information, an hourly rate of $325 is reasonable. As a result, considering the litigation in its entirety, this Court finds reasonable attorney fees in the amount of $812,500.

---

to observe that, even though the parties' negotiations were antagonistic, their positions were defensible. As a result, the settlement negotiations are not a significant factor here.

[8]     Pursuant to Judge Doty's order of June 12, 2008, Best Buy was required to pay certain attorney fees as a result of its discovery misconduct. The defendants argue that Best Buy should not be allowed to recoup these fees, and by extension, any other attorney fees devoted to sanctioned conduct. As recovery of such fees is unreasonable in any case, this Court agrees with the defendants.

### b.   Unsuccessful Claims

As discussed at the outset, the claims advanced by Best Buy included fraud and breach of fiduciary duty.  A preponderance of these claims was decided against Best Buy, on motions to dismiss or for summary judgment.  Best Buy then voluntarily dismissed the few surviving fraud claims.  The defendants contend that, when assessing a reasonable fee award, this amount should be reduced to reflect Best Buy's lack of success on its tort claims.

In support of this argument, the defendants rely in significant part on the U.S. Supreme Court decision in *Hensley v. Eckerhart*, which considered reasonableness of attorney fees under 42 U.S.C. § 1988.  461 U.S. 424 (1983).  After adopting the lodestar method, the Court specifically examined circumstances where a prevailing party succeeded on only some claims for relief.  The Court identified two factors that may influence the amount of the lodestar award:  (1) whether the unsuccessful claims were related to the successful ones, and (2) whether the hours expended were reasonably related to the level of success achieved.  *Id.* at 434.

Consistent with this analysis, the controlling jurisdictions recognize that fees should be adjusted to account for unsuccessful claims.  *See, e.g., Porter v. Castle Rock Ford Lincoln Mercury, Inc.*, 895 P.2d 1146, 1150 (Colo. App. 1995); *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equipment, LLC*, 782 N.W.2d 263, 272 (Minn. App. 2010).  And these courts often use the *Hensley* factors to inform this adjustment.  *See, e.g., Harvey Barnett, Inc. v. Shidler*, 200 Fed.Appx. 734, 746 (10th Cir. 2006) (fee provision under Colorado law).

There is also a countervailing concern that affects this analysis, especially when assessing the relatedness of claims.  If it is impracticable to parse out work on successful claims from work on unsuccessful claims, there may be less reason to adjust a fee award.  *See, e.g., Accusoft Corp. v. Palo*, 237 F.3d 31, 61-62 (1st Cir. 2001); *Circle Y Const., Inc. v. WRH Realty Servs., Inc.*, 721

F.Supp.2d 1272, 1283 (N.D.Ga. 2010); ); *Gametech Int'l, Inc. v. Trend Gaming Sys., L.L.C.*, 380 F.Supp.2d 1084, 1099-1100 (D.Ariz. 2005) (fee provision under Arizona law).

With regard to the first *Hensley* factor, this Court returns to its prior observation that the contract and tort claims were closely related. If the torts were proven, they would also constitute a default under the leases. Due to this close relationship, there is no practical way to distinguish work on the successful contract claims from that on the unsuccessful tort claims. This militates against adjustment of the lodestar amount.

The other *Hensley* factor, whether hours expended were reasonably related to the level of success achieved, implicates the preceding lodestar analysis. As this Court explained, there must be a reasonable business relationship between the resources expended and the object of litigation, and this is equally true for the tort claims. With due regard for the close relationship between the tort and contract claims here, and the ultimate results achieved, 2,500 hours was a reasonable amount of time to conduct litigation on both types of claims.[9]

In these circumstances, both successful and unsuccessful claims are reasonably reflected by the lodestar calculation. No further adjustment of that calculation is necessary.

### c.    Allocation

This Court previously determined that, under the leases' fee provisions, the defendants do not share joint and several liability. As a result, it is necessary to decide what share of attorney fees should be borne by each of the defendants. The defendants argue that, of those defendants bound by fee provisions, their fee liability should be proportionate with their respective liabilities under the judgments in this matter. Best Buy counters that such proration of fees is improper.

---

[9]     The defendants argue that Best Buy devoted undue time to its fraud claims. This concern was taken into consideration when deciding what amount of time was reasonable here.

To support its argument against proration, Best Buy cites two unpublished cases. Both involve awards of attorney fees under 42 U.S.C. § 1988 and other remedial statutes. In one case, the court recognized its discretion to apportion separate fees, but it proceeded to impose joint and several liability. *White v. McKinley*, No. 05-203, 2009 WL 813372 at *10 (W.D.Mo. Mar. 26, 2009). The other case, citing few authorities, rejected proration in favor of "generally accepted joint and several liability for attorney fees[.]" *Walter v. Clarion Mortgage Capital, Inc.*, No. 08-536, 2010 WL 1170136 at *2 (W.D.Mo. Mar. 23, 2010).

The underlying premise for Best Buy's argument against proration, therefore, is that the defendants share joint and several liability. And this contention relies on authorities that apply remedial fee statutes, instead of contractual fee provisions. As this Court previously determined, joint and several liability may be permitted for fee awards under § 1988, but this rationale cannot be used to impute fee liability beyond the parties to a contract.

In the absence of joint and several liability, the only reasonable alternative is to apportion fee liability between the respective defendants. This ensures that fee awards are proportionate to the wrongdoing of the losing parties, and it avoids imputing undue fee liability to parties with a reduced stake in the matter. *Newport Pacific Capital Co. v. Waste*, 878 P.2d 136, 140 (Colo. App. 1994). This Court, therefore, allocates fee liability in proportion to each landlord defendant's share of liability under the total judgments.[10]

## B. Motion for Costs

Of the fourteen leases that contain attorney fee provisions, five also provide for an award of costs to the prevailing party. For this motion, several issues are coextensive with those posed

---

[10] The precise percentages of liability are set forth in Appendix B of this report and recommendation. Because one of the fifteen leases did not contain an attorney fee provision, this defendant landlord is not liable for attorney fees, and it is omitted from this appendix.

by the motions for attorney fees. Consistent with the preceding choice-of-law analysis, the five leases are governed by the laws of Arizona, Arkansas, Massachusetts, and Minnesota.

### 1.      Timeliness

As a threshold question, the defendants contend that the motion is untimely. There is no indication that the motion would be untimely under the Civil Rules, the local rules, or applicable court orders. To support their argument, the defendants cite one unpublished case. It summarily ruled that, when a prevailing party brings a motion for costs under a contractual cost provision, this motion cannot be filed after the final judgment. *Hallmark Cards, Inc. v. Gainey Transp. Servs.*, No. 04-77, 2005 WL 2017533 at *1 (W.D.Mo. Aug. 17, 2005). This authority is neither binding nor persuasive, and in the absence of any other procedural constraints, this Court reaches the motion for costs on its merits.

### 2.      Tort Claims

The defendants also renew their argument that the cost provisions only cover contractual claims, not tort claims. As the cost provisions are incorporated with the attorney fee provisions, this issue must be resolved the same way it was in the motions for attorney fees. In accordance with that reasoning, the cost provisions cover costs incurred from litigation of the tort claims.

### 3.      Joint and Several Liability

Consistent with its previous arguments, Best Buy contends that liability under the cost provisions must be borne jointly and severally by all the defendants. But as discussed beforehand, there is no sound reason to impute contractual liability beyond the parties to each respective lease.[11]

---

[11]      Relying on the same arguments and authorities that it cited in its motion for attorney fees, Best Buy further contends that it would be improper to prorate costs between the individual

Suggesting there is authority to the contrary, Best Buy cites a case where the losing parties shared joint and several liability for costs awarded under Rule 54(d). *See Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002). But this rule governs costs as to all parties in litigation. By comparison, the cost provisions are only enforceable as to the specific parties to each lease. Authorities interpreting the rule, therefore, do not apply to the current contractual dispute.

### 4. Scope of Costs

The parties also dispute what costs are within the scope of the fee provisions. The defendants argue that the fee provisions only include those costs included in 28 U.S.C. § 1920. Best Buy counters that the provisions can include other costs of litigation.

To resolve this argument, it is once again necessary to distinguish between costs awarded under Rule 54(d) and those available pursuant to a contract. The rule allows a prevailing party to recover costs from the losing parties. The statute, in turn, governs what costs are compensable under the rule. *See generally Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 601 (8th Cir. 2009).

When interpreting cost provisions in a contract, however, a court is guided by principles of contractual interpretation. Two of those principles merit particular attention here.

One is that, to honor the intentions of the parties to a contract, it should be interpreted in a manner that gives effect to all its provisions, rather than negating particular provisions. *See, e.g., Wintermute v. Kansas Bankers Sur. Co.*, — F.3d —, 2011 WL 31531 at *4 (8th Cir. 2011) (applying Arkansas law); *Global NAPs, Inc. v. Verizon New England, Inc.*, 447 F.Supp.2d 39, 49 (D.Mass. 2006). A contract should also be interpreted consistent with the law that existed at the

---

landlord defendants. Consistent with the prior analysis of the motion for attorney fees, this Court rejects the argument.

time the contract was executed.  *See, e.g., City of Lamar v. City of Clarksville*, 863 S.W.2d 805, 810 (Ark. 1993).

If the cost provisions were limited to costs available under § 1920, then these provisions become superfluous, as the same relief has long been available under Rule 54(d).  The parties would not have included a cost provision in their leases, therefore, unless they intended recovery of costs beyond those allowed under § 1920.  *Cf. Weitz Co. v. MH Washington*, — F.3d —, 2011 WL 43620 at *20-21 (8th Cir. 2011) (applying Missouri law) (favorably citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987)).

The defendants principally counter with *Coury Bros. Ranches, Inc. v. Ellsworth*, a case from the Arizona Supreme Court.  446 P.2d 458 (Ariz. 1968).  There the court interpreted a contract that provided for "legal costs in case of . . . default[.]"  It reasoned that the phrase "legal costs" meant those "usually recovered in legal actions and does not include attorney fees[.]"  As a result, the court upheld the district court's decision to deny attorney fees.  *Id.* at 466.

Because the *Coury Bros.* court defined costs to mean those "usually recovered in legal actions," the defendants contend that costs cannot exceed those permitted under the civil rules.  But the court did not expressly refer to any civil rules.  The only question it expressly decided was whether "legal costs" costs include attorney fees.  To the extent the court suggested other limitations on contractually recoverable costs, this is dictum.  There is no indication that ensuing decisions have adopted this dictum or found it persuasive.  For these reasons, *Coury Bros.* does not influence the analysis here.

### 5. Reasonableness

This Court now turns to the question of what particular costs Best Buy can recover under the cost provisions here. As the cost provisions are coextensive with the attorney fee provisions, reasonableness applies with equal force in this context.

To demonstrate its costs, Best Buy generally submits receipts for various costs incurred throughout the history of the litigation. In many instances, Best Buy has not submitted sufficient evidence demonstrating why the costs were incurred, and such costs will accordingly be found unreasonable. And for several other items, costs are plainly excessive, without further evidence showing why such costs could be reasonable. These will also be denied.[12]

Another concern is the allocation of cost liability. Best Buy has submitted costs from the entire litigation, but the cost provisions govern only five of the sixteen defendants. As this Court determined earlier, joint and several liability is not appropriate here.

In accordance with those concerns that warranted individual allocation of attorney fees, the better course is to allocate cost liability as well. This assures that the five defendants do not absorb the costs of litigation against the other eleven defendants. In the same way that attorney fees were allocated, cost liability will be also be allocated in proportion to each defendant's share of liability under the total judgments.[13]

---

[12]    For each category of costs submitted, specific findings are listed in Appendix C of this report and recommendation.

[13]    The allocation of the five defendants' cost liability, with an adjustment for the late entry of MDT Fayetteville Spring Creek, is listed in Appendix D of this report and recommendation.

The defendants argue in part that, to the extent Best Buy seeks costs prior to their joinder to this litigation, those costs should be excluded. The record shows that, of the defendants whose leases include cost provisions, four of the five were joined to this litigation on April 11, 2006; the fifth was joined on December 27, 2006. As a result, costs will be limited to those incurred as of April 11, 2006. This limitation has nominal significance, however, as Best Buy incurred most

## C.    Motion for Review of Cost Judgment

Through its remaining motion, Best Buy seeks review of the cost judgment that the Clerk issued at the close of this litigation.  It primarily challenges the Clerk's denial of costs as to six expedited deposition transcripts.[14]

Best Buy explains that five of the expedited transcripts were necessary so that one of its experts could timely meet the deadline for preparing a report.  When this Court later denied Best Buy's motion to amend its complaint and plead punitive damages, Best Buy objected and used the report to support its objection.  As discussed at the outset, Judge Doty ultimately overruled this objection.

Regarding the sixth transcript, Best Buy contends that the deposition witness was not adequately prepared for the deposition.  It expedited the transcript so that it could promptly move for discovery sanctions.  Before the motion was filed, however, the defendants agreed to make other witnesses available for deposition.  Best Buy does not say whether the expedited transcript was used for any other purpose.

---

of its costs after June 2006.  To reflect the late entry of the fifth landlord defendant, MDT Fayetteville Spring Creek, there will be a modest downward adjustment in its cost liability.

[14]     Best Buy mentions a few other items where the Clerk denied costs.  But it then goes on to explain that, rather than seeking reversal of the Clerk's decision, it is pursuing recovery through its motion for costs.  As that motion has already been fully determined, these items do not merit additional discussion.

The defendants interpose some procedural arguments against the motion for review of the cost judgment.  As the following analysis reveals, most of the relief sought through the motion is being denied on the merits, and so the procedural arguments do not merit substantial discussion.  Even so, this Court would reject the defendants' procedural arguments.  The standard for review of a cost judgment is de novo, and therefore, courts have discretion to receive evidence that was not submitted by the prevailing party with its bill of costs.  *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 461 (3d Cir. 2000) ("[T]he district court not only can, but should, consider evidence that completes the factual record or sheds light on the equities of the case.").

To be taxable by the Clerk, costs must be within the scope of 28 U.S.C. § 1920. *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 957 (8th Cir. 2007) (quotation omitted). Among other items, a prevailing party may recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2).

When considering necessity, a court examines the circumstances that existed at the time of the deposition. If the depositions were purely investigatory in nature, they are not necessary within the meaning of the statute. *Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 363 (8th Cir. 1997). Another important consideration is whether the transcript was actually used in a court proceeding. *Ryther v. KARE 11*, 864 F.Supp. 1525, 1534 (D.Minn. 1994).

Courts also have discretion to deny costs. For instance, where transcripts are withdrawn from evidence, or the ensuing testimony of deposition witnesses is found inadmissible, denial of costs is within the bounds of discretion. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762-63 (8th Cir. 2006).

Regarding the circumstances here when the depositions were taken, Best Buy generally fails to say what information came to light. Without this information, there is no way to assess whether Best Buy actually needed to expedite the deposition transcripts, or for that matter, if it needed the transcripts at all.

There is no indication that the transcripts were filed during the course of the litigation. Furthermore, though five transcripts were cited in the expert report, the report had no significant influence on the litigation. It was only used to support an objection to a nondispositive motion, and that objection was overruled. The remaining transcript was prepared for a motion to compel that never materialized. And because this transcript was intended for a motion to compel, its sole purpose was to advance discovery, which means it was investigatory in nature.

Best Buy has not shown, therefore, that any of the six expedited deposition transcripts were necessary. The Clerk's denial of these costs is appropriately upheld.[15]

Best Buy also advances one other minor argument. It explains that a single deposition transcript was prepared for the depositions of Alison Mund and Catherine Kroll. The Clerk denied costs for the Mund deposition but granted costs for the Kroll deposition, and therefore, it awarded half of the cost to prepare the deposition transcript. Because the Kroll deposition was significantly longer than the Mund deposition, Best Buy requests that the deposition costs be prorated accordingly. This Court agrees and thinks it appropriate to adjust the cost judgment in the amount of $98.63.

## III.    Conclusion

Being duly advised of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    Best Buy's motion for costs (Doc. No. 749) be **GRANTED** and costs be entered for Best Buy and separately against the defendants as indicated in Appendix D of this report.

2.    Best Buy's motions for attorney fees (Doc. Nos. 756, 815) be **GRANTED** and attorney fees be entered for Best Buy and separately against the defendants as indicated in Appendix B of this report.

3.    Best Buy's motion for review of the cost judgment (Doc. No. 793) be **GRANTED IN PART AND DENIED IN PART**, and that the cost judgment of August 12,

---

[15]    Best Buy argues that, if the cost of expedited transcripts is denied, it should still receive the cost of non-expedited transcripts. But Best Buy did not establish its need for the transcripts, expedited or not, and so these costs are not taxable in any event.

2010 be modified to include another $98.63 in costs, for a total cost judgment of $50,829.35.

Dated this 31st day of January, 2011.

s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 15, 2011.** A party may respond to the objections within fourteen days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

## APPENDIX A
## ATTORNEY FEE AND COST PROVISIONS

| Defendant Landlord | Choice of Law (Where Present) | Provision |
|---|---|---|
| Ahwatukee Foothills | AZ | ¶ 24: "If Landlord or Tenant files a suit against the other which is in any way connected to this Lease, the unsuccessful party shall pay to the prevailing party a reasonable sum for attorneys' fees, which will be deemed to have accrued on the commencement of such action . . . . In addition, in the event either party shall hire an attorney as a result of a breach by the other party of any material term . . . of this Lease . . . in order to fully cure such breach or default, the party in such breach or default shall reimburse the other party for the reasonable attorneys' fees and costs incurred by the non-breaching party in enforcing the other party's obligations, whether or not a legal action is commenced." |

| | | |
|---|---|---|
| MDT Fayetteville Spring Creek | AR | ¶ 34: "In the event Tenant or Landlord defaults in the performance of any of the terms . . . . in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay on demand the other party's actual and reasonable attorney fees and related costs, whether suit is actually filed or not." |
| Flatiron | CO | ¶ 34: "In the event of a dispute between Tenant and Landlord with regard to this Lease, and the matter is placed in the hands of an attorney for the enforcement of all or any part of this Lease, the non-prevailing party agrees to pay on demand the other party's reasonable attorneys' fees for the services of the attorney, whether suit is actually filed or not." |
| JDN Realty ("Douglasville") | GA | ¶ 34: "In the event Tenant or Landlord defaults in the performance of any of the terms . . . in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay on demand the other party's reasonable attorneys' fees for the services of the attorney, whether suit is actually filed or not." |
| MDT Turner Hill Marketplace | GA | ¶ 34: "In the event Tenant or Landlord defaults in the performance of any of the terms . . . in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay on demand the other party's reasonable attorneys' fees for the services of the attorney, whether suit is actually filed or not." |
| PDK Salisbury | | ¶ 40: "If either party hereto be made or becomes a party to any litigation commenced by or against the other party involving the enforcement of any of the rights and remedies of such party, or arising on account of the default of the other party in the performance of such party's obligations hereunder, then the prevailing party in any such litigation, or the party becoming involved in such litigation because of a claim against such other party, as the case may be, shall receive from the other party all costs and reasonable attorneys' fees and other professional fees incurred by such party in such litigation." |

| | | |
|---|---|---|
| MDT Shoppers World | MA | ¶ 34: "In the event Tenant or Landlord defaults in the performance of any of the terms . . . in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay on demand the other party's actual and reasonable attorneys' fees and related costs, whether suit is actually filed or not." |
| MDT Riverdale Village Outer Ring | MN | ¶ 33: "If Tenant or Landlord defaults in the performance of any of the terms . . . in this Lease, the defaulting party agrees to pay on demand the other party's actual and reasonable attorneys' fees and related costs, whether suit is actually filed or not." |
| Hendon Nassau Park | | ¶ 41: "If Tenant or Lessor shall bring any action for any relief against the other, declaratory or otherwise, arising out of this Lease . . . the losing party shall pay the successful party a reasonable sum for attorneys' fees." |
| Benderson-Wainberg Assocs. ("Wrangleboro") | | ¶ 44: "In the event Tenant or Lessor defaults in the performance of any of the terms . . . . in this lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay on demand the other party's reasonable attorneys' fees for the services of the attorney, whether suit is actually filed or not." |
| BG Boulevard III | | ¶ 44: "In the event Tenant or Landlord defaults in the performance of any of the terms . . . in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay on demand the other party's reasonable attorneys' fees for the services of the attorney, whether suit is actually filed or not." |
| JDN Realty ("Overlook") | TN | ¶ 36: "If Tenant or Landlord shall bring any action for any relief against the other . . . arising out of this Lease . . . the losing party shall pay the successful party a reasonable sum for attorneys' fees which shall be deemed to have accrued on the commencement of such action and shall be paid whether or not such action is prosecuted to judgment." |
| MDT Cool Springs Point | | ¶ 41: "If Tenant or Lessor shall bring any action for any relief against the other . . . the losing party shall pay the successful party a reasonable sum for attorneys' fees." |

| MDT Lakepointe Crossing | TX | ¶ 40: "In the event Tenant or Lessor defaults in the performance of any of the terms . . . in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this lease, the prevailing party shall be entitled to the reasonable and necessary attorneys' fees for the services of the attorney." |
|---|---|---|

**APPENDIX B**
**ALLOCATION OF ATTORNEY FEE LIABILITY**

| Defendant Landlord | Individual Liability under June 8, 2010 & November 4, 2010 Judgments | Proportion of Total Liability Under Judgments (*percentage of individual defendant's liability compared to total $1,124,749.64 in judgments*) | Allocation of Reasonable Fee Liability (*percentage applied to $815,500 in reasonable fees*) |
|---|---|---|---|
| Ahwatukee Foothills | $100,269.85 | 8.9% | $72,579.50 |
| MDT Fayetteville Spring Creek | $74,600.42 | 6.6% | $53,823.00 |
| Flatiron | $21,915.46 | 1.9% | $15,494.50 |
| JDN Realty ("Douglasville," "Overlook") | $94,949.92 | 8.4% | $68,502.00 |
| MDT Turner Hill Marketplace | $54,646.98 | 4.9% | $39,959.50 |
| PDK Salisbury | $18,519.67 | 1.6% | $13,048.00 |
| MDT Shoppers World | $148,190.44 | 13.2% | $107,646.00 |
| MDT Riverdale Village Outer Ring | $76,828.30 | 6.8% | $55,454.00 |
| Hendon Nassau Park | $138,180.59 | 12.3% | $100,306.50 |
| Benderson-Wainberg Assocs. ("Wrangleboro") | $70,027.77 | 6.2% | $50,561.00 |
| BG Boulevard III | $61,807.72 | 5.5% | $44,852.50 |

| | | | |
|---|---|---|---|
| MDT Cool Springs Point | $88,624.28 | 7.9% | $64,424.50 |
| MDT Lakepointe Crossing | $61,533.99 | 5.5% | $44,852.50 |

## APPENDIX C
## DETERMINATION OF COMPENSABLE COSTS
## UNDER LEASE COST PROVISIONS

| Category by Declaration Exhibit | Reasonable Costs | Rationale for Reduced Cost Award, Where Applicable |
|---|---|---|
| Becker Exh. B (Service of Process) | $0 | Includes service against defendants that are not bound by cost provisions; receipts do not consistently substantiate whether services were rendered in this litigation |
| Becker Exh. C (Federal Express) | $0 | Insufficient evidence showing why express mail service was reasonable |
| Becker Exh. D (Local Courier Service) | $0 | Insufficient evidence showing why courier service was reasonable; includes receipt from unrelated litigation |
| Becker Exh. E (Other Messenger Service) | $389.60 | Insufficient evidence showing why messenger service was reasonable; compensation only for deliveries to federal court |
| Becker Exh. F (Travel to Hartford) | $1,355.15 | Luxury meal |
| Becker Exh. F (Travel to Chicago) | $1,378.01 | First class flight |
| Becker Exh. F (Travel to Cleveland) | $1,888.01 | |
| Becker Exh. F (Travel to San Francisco) | $2,993.78 | |
| Becker Exh. F (Travel to Newark) | $329.50 | First class flight; lower figure also reflects commingling of records from San Francisco and Newark trips |
| Becker Exh. F (Flight Cancellation Fee) | $52.00 | |
| Becker Exh. G (Video Depositions) | $3,474.08 | Fee for video deposition of Bruce Deal is misstated |

| | | |
|---|---|---|
| Becker Exh. H (Deposition Costs) | $0 | Insufficient evidence showing why enhanced deposition services were reasonable |
| Becker Exh. I (Hearing Transcripts) | $70.00 | |
| Becker Exh. J (Expert Fees) | $25,000.00 | Insufficient evidence showing why use and cost of expert services was reasonable |
| Becker Exh. K (Meals) | $732.67 | |
| Becker Exh. L (Parking) | $103.52 | |
| Becker Exh. M (Document Coding) | $791.88 | |
| Becker Exh. N (Database Conversion) | $0 | Insufficient evidence showing why database conversion was reasonable |
| Becker Exhs. O, P, Q, R (Document Imaging Services) | $3,868.07 | Insufficient evidence showing why use and cost of document imaging services was reasonable |
| Becker Exh. S (Telephone) | $0 | Insufficient evidence showing why telephone service was reasonable |
| Becker Exhs. T, U, V, W (Copying Services) | $7,500.00 | Insufficient evidence showing why use and cost of copying services was reasonable; some receipts duplicative |
| Machson Exh. B (Airfare) | $10,000.00 | Insufficient evidence to determine whether flight costs were reasonable |
| Machson Exh. C (Hotel) | $8,726.82 | |
| Machson Exh. D (Meals) | $0 | Insufficient evidence to determine whether meal costs were reasonable |
| Machson Exh. E (Rental Car) | $799.95 | Excludes rental car from December 2005 |
| Machson Exh. F (Tolls, Parking, Cabs) | $2,852.00 | |
| Machson Exh. G (Video Depositions) | $11,497.80 | |
| Machson Exh. H (Deposition Costs) | $1,150.00 | Insufficient evidence showing to determine whether deposition costs were reasonable or why enhanced deposition services were reasonable |

| Machson Exh. I (Publications) | $0 | Insufficient evidence showing why purchase and use of publications is reasonable |
| Machson Exh. J (UPS) | $0 | Insufficient evidence to assess whether shipping costs were reasonable |
| Machson Exh. K (Copying Services) | $5,453.56 | |
| Machson Exh. L (Expert Fee) | $2,850.00 | |
| Machson Exh. M (Miscellaneous Costs) | $505.11 | Insufficient evidence showing why purchase of publications is reasonable; same reasoning applies to shipping costs |
| TOTAL COMPENSABLE COSTS | $93,761.51 | |

## APPENDIX D
## ALLOCATION OF COST LIABILITY

| Defendant Landlord | Proportion of Total Liability Under Judgments (*see Appendix B*) | Allocation of Reasonable Cost Liability (*percentage applied to $93,761.51 in reasonable costs*) |
| --- | --- | --- |
| Ahwatukee Foothills | 8.9% | $8,344.77 |
| MDT Fayetteville Spring Creek | 6.3% [*] | $5,906.98 |
| PDK Salisbury | 1.6% | $1,500.18 |
| MDT Shoppers World | 13.2% | $12,376.52 |
| MDT Riverdale Village Outer Ring | 6.8% | $6,375.78 |

---

[*]    As discussed in footnote 13 of this report, the proportionate liability of MDT Fayetteville Spring Creek is adjusted downward to reflect its late entry into this litigation. Because Best Buy incurred most of its costs after the joinder of MDT Fayetteville Spring Creek, however, this downward adjustment is relatively modest.